**Date Signed:**
**August 4, 2021**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>JASPER CESAR MANUEL,<br><br>Debtor. | Case No. 11-02712 (RJF)<br>Chapter 7 |
| RICHARD A. YANAGI, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.; and DOE DEFENDANTS 1-50,<br><br>Defendants. | Adv. No. 21-90001 |

## ORDER CERTIFYING QUESTIONS
## TO THE HAWAIʻI SUPREME COURT

Pursuant to Haw. Rev. Stat. section 602–5(a)(2) and Haw. R. App. P. 13, this court respectfully certifies the following questions to the Hawaiʻi Supreme Court:

1. Whether an action alleging a wrongful nonjudicial foreclosure of Land Court property that seeks only money damages against the foreclosing lender, and does not seek to avoid the foreclosure sale or affect title to the property, is an action that "directly impeach[es] . . . any foreclosure proceedings affecting registered land" within the meaning of Haw. Rev. Stat. section 501–118(c), and is time barred if filed after the issuance of a certificate of title to the buyer at a foreclosure sale.

2. Whether a putative class action asserting wrongful foreclosure claims extends the time during which a class member may commence an individual action under Haw. Rev. Stat. section 501–118(c), where the putative class action was commenced before the issuance of a certificate of title to the buyer at the foreclosure sale; and, if there is such an extension, how long does it last?

The answers to these questions of substantive Hawaiʻi law are "determinative of the cause" in *Yanagi v. Bank of America (In re Manuel)*, Adv. No. 21-90001, before this court. They are not answered by "clear controlling precedent in the Hawaiʻi judicial decisions." Haw. R. App. P.

13(a). This court therefore respectfully asks the Hawaiʻi Supreme Court to exercise its discretion to accept and decide the certified questions.

## I. STANDARD FOR CERTIFYING A QUESTION

The legislature has given the Hawaiʻi Supreme Court jurisdiction "[t]o answer, in its discretion, . . . any question or proposition of law certified to it by a federal district or appellate court if the supreme court shall so provide by rule[.]"[1]

The Supreme Court has adopted a rule implementing the statutory grant of jurisdiction. "When a federal district court or appellate court certifies to the Hawaiʻi Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawaiʻi that is determinative of the cause and that there is no clear controlling precedent in the Hawaiʻi judicial decisions, the Hawaiʻi Supreme Court may answer the certified question by written opinion."[2]

---

[1] Haw. Rev. Stat. § 602-5(a)(2).
[2] Haw. R. App. P. 13(a).

U.S. Bankruptcy Court - Hawaii   #21-90001   Dkt # 41   Filed  08/04/21   Page 3 of 19

The statute and rule refer to the federal district court, not the bankruptcy court. But the bankruptcy court "constitute[s] a unit of the district court" under 28 U.S.C. § 151. Therefore, the bankruptcy court respectfully submits that the Hawaiʻi Supreme Court may, in its discretion, accept this certification.

The answer to the certified questions will determine whether the plaintiff's complaint was timely and thus is "determinative of the cause." As I explain in more detail below, no clear controlling judicial precedent from the Hawaiʻi state courts answers these questions.[3]

## II. STATEMENT OF PRIOR PROCEEDINGS AND FACTS

### A. <u>Foreclosure</u>

Jasper Cesar Manuel owned a condominium unit in Honolulu ("Property") on land that is registered in the Land Court of the State of

---

[3] According to Bank of America, the certified questions are before the Intermediate Court of Appeals in *Boyd v. Bank of America* and *Hillinger v. Bank of America*. The Supreme Court has very recently denied the plaintiffs' motion to transfer the appeals from the ICA (SCAP-20-0000577). Under the statute and rule, the propriety of a certified question depends on the lack of "clear controlling precedent"; the pendency of an appeal which might result in clear controlling precedent is not the same thing. But the decision to accept a certified question rests in the Supreme Court's discretion.

Hawaiʻi. The Property was encumbered by a mortgage. After a series of assignments, Bank of America, N.A. ("BANA") succeeded to the mortgagee's interest.

On June 14, 2010, BANA's predecessor in interest conducted a public auction of the Property. The Mortgagee's Affidavit of Foreclosure Under Power of Sale ("Affidavit"), executed and recorded on June 29, 2010, declared BANA "or its nominee" the successful bidder at the auction.

On July 17, 2010, BANA quitclaimed the Property to Federal National Mortgage Association ("Fannie Mae"). The quitclaim deed was recorded in Land Court on July 28, 2010. The Land Court did not issue a new certificate of title to Fannie Mae until November 10, 2015.

In the meantime, Fannie Mae conveyed the Property to a third party by a Limited Warranty Apartment Deed dated March 28, 2011, and recorded in the Land Court on April 1, 2011. Again, it took the Land Court about five years, until November 29, 2016, to issue a new certificate of title in favor of the third party.

Still later, the third party conveyed the Property to himself and his wife by Apartment Deed recorded in Land Court on September 30, 2020.

## B.     Mr. Manuel's Bankruptcy and the *Degamo* Class Action

Mr. Manuel filed his chapter 7 bankruptcy petition on October 12, 2011. He did not list the Property or his claims against BANA in his original bankruptcy schedules. He received a discharge and his bankruptcy case was closed on January 10, 2012.

Mr. Manuel was a member of a plaintiff class in a putative class action entitled *Degamo v. Bank of America, N.A., et al.*, Case No. 1:13-cv-00141-JAO-KJM. *Degamo* was filed in the circuit court on September 7, 2012, and subsequently removed to the federal district court. The plaintiffs in *Degamo* alleged that BANA had wrongfully foreclosed mortgages on the plaintiffs' properties.  On March 14, 2019, the district court dismissed *Degamo* on the basis that the class representatives lacked standing because their prior bankruptcy cases made their claims property of their bankruptcy estates, not property of the class representatives. The district

6

court never reached the issue of whether the plaintiff class should be certified.

On appeal, the Ninth Circuit affirmed most of the district court's decision. It held that the court erred, however, when it failed to consider the merits of motions to intervene filed by five putative class members. The court of appeals vacated that portion of the district court's decision and remanded.[4]

In December 2020, Mr. Manuel successfully reopened his bankruptcy case so he could amend his schedules to include the claims against BANA. Richard A. Yanagi was appointed trustee.

C. **Adversary Complaint and Motion to Dismiss**

The trustee filed his complaint against BANA on January 14, 2021. His complaint alleges that BANA foreclosed on the property in violation of Haw. Rev. Stat. section 667–5(a)(2) and (b)(2) (Count I) and that BANA engaged in unfair and deceptive trade practices ("UDAP") as well as unfair

---

[4] *Degamo v. Bank of Am., N.A.*, Civil No. 13-00141 JAO-KJM, 2019 WL 1209086 (D. Haw. Mar. 14, 2019), *aff'd in part, vacated in part, and remanded*, No. 19-14736, No. 19-15826, 849 F. App'x 620 (9th Cir. Feb. 22, 2021).

7

U.S. Bankruptcy Court - Hawaii   #21-90001   Dkt # 41   Filed  08/04/21   Page 7 of 19

methods of competition ("UMOC") under Haw. Rev. Stat. chapter 480 (Count II). For these alleged violations, the trustee sought only compensatory and punitive money damages.[5] Although the body of the complaint states that the foreclosure sale was defective and void,[6] the prayer does not request recovery of the property itself or avoidance of the foreclosure sale and the trustee did not sue Fannie Mae or the successor owners of the property.[7]

BANA filed a motion to dismiss this adversary proceeding under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012.

### III. QUESTIONS OF LAW TO WHICH AN ANSWER IS SOUGHT AND EFFECT OF AN ANSWER ON THE PROCEEDINGS

As noted above, this court seeks the answer to two questions of law.

The first has to do with the time limit imposed by Haw. Rev. Stat. section 501–118(c):

> Whether an action alleging a wrongful nonjudicial foreclosure of Land Court property that seeks only money damages against the foreclosing lender and does not seek to avoid the foreclosure sale

---

[5] Compl. ¶ 73, ECF No. 1.
[6] *See id.* ¶ 50.
[7] *Cf. id.* at 26-27.

or affect title to the property, is an action that "directly impeach[es] . . . any foreclosure proceedings affecting registered land" within the meaning of Haw. Rev. Stat. section 501–118(c), and is time barred if filed after the issuance of a certificate of title to the buyer at a foreclosure sale.

If the Supreme Court answers this question in the negative, this court will deny BANA's motion to dismiss, and the case will proceed. If, on the other hand, the Supreme Court answers the first question in the affirmative, the second question will become relevant:

Whether a putative class action asserting wrongful foreclosure claims extends the time during which a class member may commence an individual action under Haw. Rev. Stat. section 501–118(c), where the putative class action was filed before the issuance of a certificate of title to the buyer at the foreclosure sale; and, if there is such an extension, how long does it last?

If the Supreme Court answers that *Degamo* does not extend the time limit under section 501–118(c), then the bankruptcy court would grant BANA's motion to dismiss the complaint. If the answer is in the affirmative, then the bankruptcy court respectfully requests that the Supreme Court define the length of that extension. The effect on the case would depend on the application of that definition to the facts of the case.

9

### A. Does Haw. Rev. Stat. section 501–118(c) bar the trustee's claims?

The first certified question concerns the meaning of the last sentence of Haw. Rev. Stat. section 501–118(c): "Nothing in this chapter shall be construed to prevent the mortgagor or other person in interest from directly impeaching by action or otherwise, any foreclosure proceedings affecting registered land, prior to the entry of a new certificate of title."

The Supreme Court's precedents clearly establish that section 501–118 bars an action to set aside a foreclosure sale if that action is brought after a new certificate of title is issued to the buyer at the foreclosure sale.[8] But no decision of the Supreme Court or the Intermediate Court of Appeals answers the question whether the issuance of the new certificate also bars an action seeking only money damages against the foreclosing lender.

---

[8] *Aames Funding Corp. v. Mores*, 110 P.3d 1042, 107 Haw. 95 (Haw. 2005); *see also Bank of N.Y. Mellon v. R. Onaga, Inc.*, 140 Haw. 358 (Haw. 2017) (appeal of a decree of foreclosure becomes moot if appellant does not obtain a stay pending appeal, because appeal could not affect title after issuance of new certificate of title); *Wells Fargo Bank v. Omiya*, 142 Haw. 439 (2018) (bar of Haw. Rev. Stat. section 501–118 goes into effect upon issuance of new certificate of title, not issuance of new certificate number).

10

U.S. Bankruptcy Court - Hawaii   #21-90001   Dkt # 41   Filed  08/04/21   Page 10 of 19

The trustee argues (in summary) that one must interpret section 501–118(c) in light of the purposes of the Land Court statute, which are "to conclusively establish title to land through the issuance of a certificate of title,"[9] and "provide[] an economical and convenient method of recording land titles," "allowing transfer of titles to be completed with great facility and ease."[10] According to the trustee, an action for money damages that does not challenge the title emanating from the foreclosure does not undermine the stability and ready transferability of Land Court titles.

BANA contends, however, that the trustee's argument cannot be squared with the language of section 501–118(c), which speaks broadly of "impeach[ing] the foreclosure proceedings," not merely contesting the title of the purchaser at the foreclosure sale.

Both parties' arguments have weaknesses.

---

[9] *Id.* at 1048, 107 Haw. at 101 (internal citations and quotation marks omitted).
[10] *Id*. at 1048-49, 107 Haw. at 101-02.

11

U.S. Bankruptcy Court - Hawaii   #21-90001   Dkt # 41   Filed 08/04/21   Page 11 of 19

BANA's interpretation does not account for the word "directly." The legislature's use of that word implies that an action "indirectly" impeaching a foreclosure proceeding is not barred when the new certificate of title issues. When asked at the hearing on BANA's motion to dismiss, BANA's counsel could not identify an action that would qualify as an indirect impeachment (but insisted that the trustee's claim for money damages is a "direct impeachment"). Arguably, an action seeking only money damages for wrongful foreclosure "indirectly" impeaches the foreclosure proceedings and is not barred.

The trustee's argument fails to account for all of the statutory language. The very next subsection, section 501–118(d), provides that, "After a new certificate of title has been entered, no judgment recovered on the mortgage note for any balance due thereon shall operate to open the foreclosure or affect the title to registered land." Arguably, if the legislature had intended section 501–118(c) to have the trustee's preferred meaning, it would have used a phrase like "open the foreclosure or affect the title to

U.S. Bankruptcy Court - Hawaii    #21-90001    Dkt # 41    Filed  08/04/21    Page 12 of 19

registered land" in section 501–118(c); instead, it used the broader phrase "impeach the foreclosure proceedings."

The trustee also argues that section 501–118(c) is phrased as an exception to a general rule ("nothing in this chapter shall be construed to prevent . . . ."). According to the trustee, the general rule is found in section 501–81, which provides that "[r]egistered land, and ownership therein, shall in all respects be subject to the same burdens and incidents which attach by law to unregistered land."[11] According to the trustee, this means that foreclosing lenders' liability for money damages due to a wrongful foreclosure should be the same for regular system property and Land Court property. In further support of his position, the trustee refers to two other provisions of the Land Court statute that appear to preserve monetary claims related to registered land. Section 501–212 provides that, "Nothing in this chapter shall be construed to deprive the plaintiff of any tort claim which the plaintiff may have against any person for loss or

---

[11] Haw. Rev. Stat. § 501–81.

13

U.S. Bankruptcy Court - Hawaii   #21-90001   Dkt # 41   Filed 08/04/21   Page 13 of 19

damage, or deprivation of land, or of any estate or interest therein."[12]

Section 501–81 states that the Land Court statute does not "change or affect in any way any other rights or liability created by law and applicable to unregistered land; except as otherwise expressly provided in this chapter."[13] According to the trustee, to harmonize section 501–118 with these sections, one must interpret section 501–118 as inapplicable to the trustee's claims for money damages.

BANA responds that (1) its interpretation of section 501–118 does not "deprive any plaintiff of any tort claim" within the meaning of section 501–212, but establishes a deadline for the assertion of such claims; and (2) section 501–118 is an "express provision" that trumps section 501–81 and 501–212 by its terms.

BANA also relies on the decisions of the federal district court for this district and the Ninth Circuit. In *Fergerstrom*,[14] certain mortgagors brought

---

[12] *Id.* § 501–212.
[13] *Id.* § 501–81.
[14] *Fergerstrom v. PNC Bank, N.A.*, 342 F. Supp. 3d 1029 (2018), *recon. denied on other grounds*, 2019 WL 1510328 (D. Haw. Apr. 5, 2019), *aff'd*, 802 Fed. App'x 268 (9th Cir. 2020).

14

an action asserting wrongful nonjudicial foreclosure of registered land and violation of Hawaii's UDAP/UMOC laws. The violations alleged in *Fergerstrom* were indistinguishable from the violations alleged in this adversary proceeding. But the remedies sought were different: the *Fergerstrom* plaintiffs sought to both undo the foreclosure sales and recover damages, while the trustee in this case seeks only damages.[15]

The *Fergerstrom* court held that section 501–118(c) barred both avoidance of the foreclosure sale and the monetary claims.[16] The plaintiffs appealed to the Ninth Circuit Court of Appeals, which affirmed in an unpublished memorandum.[17]

Following the decision of *Seegers v. CIT Bank, N.A.*, Civ. No. 17-00399 LEK-KSC, 2018 WL 1558550, (D. Haw. Feb. 28, 2018), written by another district judge in this district, the *Fergerstrom* court agreed that "legislative intent would be thwarted if the conclusive and unimpeachable character of

---

[15] *Cf. Fergerstrom*, 342 F. Supp. 3d at 1034-35.
[16] *Id.* at 1040 (citing *Aames*, 107 Haw. at 102).
[17] *Fergerstrom v. PNC Bank, N.A.*, 802 F. App'x. 268 (9th Cir. 2020).

certificates of title could be easily 'sidestepped' by suing the seller of registered land for money damages as a substitute for suing the current owner of registered land for title and possession."[18] "For the parties to a land transaction to benefit by avoiding the expense and inconvenience of gathering records as evidence of title, both parties to the transaction must be protected by the conclusive and unimpeachable character of a Land Court certificate of title."[19]

I am hesitant to question the decisions of the district court and the Ninth Circuit, even though the bankruptcy court is probably not bound, under the doctrine of *stare decisis*, by the district court's decisions[20] or the

---

[18] *Fergerstrom*, 342 F. Supp. 3d at 1042 (quoting *Seegers*, 2018 WL 1558550, at *5).
[19] *Seegers*, 2018 WL 1558550, at *5.
[20] *See Life Ins. Co of Va. v. Barakat (In re Barakat)*, 173 B.R. 672, 678-79 (Bankr. C.D. Cal. 1994) ("[I]n a district with more than one district judge, the appellate ruling by a district judge is only binding on the case in which it is made and not on the district as a whole unless the district judges themselves sit en banc and therefore bind themselves to the law enunciated in that opinion. . . . Since most appellate decisions of the district court . . . are decisions of a given district judge and are not binding on other district judges of that district, they should not be seen as binding on the bankruptcy judges of that district.") (italics removed); *see also First of Am. Bank v. Gaylor (In re Gaylor)*, 123 B.R. 236, 243 (Bankr. E.D. Mich. 1991) ("[B]ankruptcy courts are no more or less bound by opinions of the district court than are the district court judges themselves. . .").

U.S. Bankruptcy Court - Hawaii   #21-90001   Dkt # 41   Filed  08/04/21   Page 16 of 19

Ninth Circuit's unpublished affirmance in *Fergerstrom*.[21] An authoritative decision of the Supreme Court on these doubtful questions of state law would resolve this case and might resolve other similar cases pending in the state and federal courts.[22]

### B. Does class action tolling apply to Haw. Rev. Stat. section 501–118(c)?

The trustee argues that even if section 501–118(c) applies to purely monetary claims, the class action tolling rule means that his claims are timely. He notes that the *Degamo* action was filed in 2012, prior to the entry of the new Transfer Certificate of Title.

The Hawaiʻi Supreme Court has held that the commencement of a class action tolls the statute of limitations applicable to individual claims brought by members of the putative class, even when the class action is filed in another jurisdiction, and that tolling continues until the foreign

---

[21] Ninth Circuit Rule 36-3 ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").

[22] The trustee's counsel represented that judges of the Hawaiʻi circuit courts disagree about the answers to these questions.

17

U.S. Bankruptcy Court - Hawaii   #21-90001   Dkt # 41   Filed  08/04/21   Page 17 of 19

jurisdiction issues a final judgment unequivocally dismissing the putative class action.[23]

BANA contends that section 501–118(c) is a statute of repose and that such statutes are not subject to class action tolling.[24] BANA's argument is consistent with the United States Supreme Court's decision that class action tolling does not apply to a federal statute of repose.[25] No published decision of any state or federal court, however, decides whether class action tolling under Hawaiʻi law applies to statutes of repose in general or whether section 501–118(c) in particular is a statute of repose. A definitive decision of the Supreme Court could dispose of this case (and perhaps other cases pending in the state and federal courts).

## IV.  ORDER

The Clerk of Court is directed to transmit a copy of this order to the Hawaiʻi Supreme Court under the official seal of the United States

---

[23] *Patrickson v. Dole Food Co.*, 368 P.3d 959, 137 Haw. 217 (Haw. 2015).
[24] BANA also provides other arguments that class action tolling does not save the trustee's claims. Those other arguments are not within the scope of the certified questions.
[25] *Cal. Pub. Emps.' Ret. Sys. v. ANZ Secs., Inc.*, 137 S. Ct. 2042, 2052 (2017).

U.S. Bankruptcy Court - Hawaii   #21-90001   Dkt # 41   Filed 08/04/21   Page 18 of 19

Bankruptcy Court for the District of Hawaiʻi. The Clerk is also directed to provide "original or copies of all or any portion of the record" in this case as "the Hawaiʻi Supreme Court may, in its discretion, require."[26]

Further proceedings in this court are stayed pending action by the Hawaiʻi Supreme Court.

**END OF ORDER**

---

[26] Haw. R. App. P. 13(c).

U.S. Bankruptcy Court - Hawaii   #21-90001   Dkt # 41   Filed  08/04/21   Page 19 of 19