**Electronically Filed
Supreme Court
SCCQ-21-0000462
08-MAR-2023
09:03 AM
Dkt. 65 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

IN RE: JASPER CESAR MANUEL, Debtor,
Plaintiff-Appellee.
(Case No. 11-02712 (RJF))
(Chapter 7)
------------------------------------------------------
RICHARD A. YANAGI, Chapter 7 Trustee,

vs.

BANK OF AMERICA, N.A.,
Defendant-Appellant.
(Adv. No. 21-90001)
_____

SCCQ-21-0000462

CERTIFIED QUESTION FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF HAWAI'I
(Case No. 11-0712 (RJF) (Chapter 7); Adv. No. 21-90001)

MARCH 8, 2023

RECKTENWALD, C.J., McKENNA, WILSON, AND EDDINS, JJ., AND
CIRCUIT JUDGE OCHIAI, IN PLACE OF NAKAYAMA, J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

The United States Bankruptcy Court for the District of

Hawai'i ("bankruptcy court") certified two questions to this

court, which we have determined are amenable to answer.  Those questions are

> 1.  Whether an action alleging a wrongful nonjudicial foreclosure of Land Court property that seeks only money damages against the foreclosing lender, and does not seek to avoid the foreclosure sale or affect title to the property, is an action that "directly impeach[es] . . . any foreclosure proceedings affecting registered land" within the meaning of Haw. Rev. Stat. section 501-118(c), and is time barred if filed after the issuance of a certificate of title to the buyer at a foreclosure sale.

> 2.  Whether a putative class action asserting wrongful foreclosure claims extends the time during which a class member may commence an individual action under Haw. Rev. Stat. section 501-118(c), where the putative class action was commenced before the issuance of a certificate of title to the buyer at the foreclosure sale; and, if there is such an extension, how long does it last?

The bankruptcy court explains that if we "answer[] the [first] question in the affirmative, the second question will become relevant."  We answer the first question in the negative. Although the bankruptcy court would then consider the second question irrelevant, we provide a brief answer to that question, to the extent the answer continues to bear on the timeliness of Plaintiff-Appellee[1] Jasper Cesar Manuel's ("Manuel") wrongful foreclosure claims.

First, an action alleging a wrongful nonjudicial foreclosure of Land Court property that seeks only damages against the foreclosing lender is not an action that "directly impeaches" any foreclosure proceedings affecting registered land

---

[1] Initially, Manuel's bankruptcy trustee, Richard A. Yanagi, was the plaintiff-appellee in these proceedings.  By order dated August 8, 2022, this court granted the trustee's motion to substitute Manuel as the plaintiff-appellee.

within the meaning of Hawai'i Revised Statutes ("HRS") § 501-118 (2018); therefore, the action is not barred by the entry of a transfer certificate of title ("TCT") to the buyer at a foreclosure sale.  Second, our cases hold generally that the pendency of a putative class action tolls the time during which a class member may commence an individual action.  The time for commencing an individual action is tolled until a clear denial of class certification.

## II.  Background

The following factual and procedural background is not reasonably undisputed.  Manuel owned a condominium unit registered in the Land Court of the State of Hawai'i.  The property was encumbered by a mortgage through BAC Home Loans Servicing, the predecessor-in-interest to Defendant-Appellant Bank of America, N.A. ("BANA").  Manuel defaulted on his mortgage.

On June 14, 2010, BAC Home Loans Servicing conducted a public foreclosure auction of the property and acquired the property itself.  It then conveyed the property to Federal National Mortgage Association ("Fannie Mae") by Mortgagee's Quitclaim Deed recorded in Land Court on July 28, 2010.  Fannie Mae then sold the property to Christopher Yukio Ichiki by a Limited Warranty Apartment Deed recorded in Land Court on April 1, 2011.  The Land Court certified the new TCTs on November 10,

2015 (certifying the TCT for the transfer from BAC Home Loans Servicing to Fannie Mae) and November 29, 2016 (certifying the TCT from Fannie Mae to Ichiki).

Manuel filed a chapter 7 bankruptcy petition on October 12, 2011. Neither the property nor his wrongful foreclosure claim against BANA were listed in his original bankruptcy schedules. Manuel was discharged in bankruptcy in January 2012 and his case closed.

In September 2012, a putative wrongful foreclosure class action, Degamo v. Bank of America, N.A., was filed in state court and removed to the United States District Court for the District of Hawai'i ("district court"). Manuel was a member of the plaintiff class. On March 19, 2019, the district court dismissed the case on the basis that the class representatives lacked standing because their prior bankruptcy cases made their wrongful foreclosure claims property of their bankruptcy estates, not property of the class representatives themselves. On appeal to the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"), the district court's order was affirmed in all respects but one: it was vacated and remanded for the district court to consider a motion to intervene filed by the trustees of the bankruptcy estates of the putative class representatives. On remand, the district court denied the motion as moot on September 29, 2021. Degamo v. Bank of

4

America, N.A., Civil No. 13-00141 (D. Haw. Sept. 29, 2021).
This is because "the proposed intervenors' counsel represented
[to the district court at a status conference] that the
intervenors are no longer inclined to intervene. . . ." Degamo,
Civil No. 13-00141 at 2.  Plaintiffs did not appeal.

In the meantime, in December 2020, Manuel reopened his
bankruptcy case to amend his schedules to include the wrongful
foreclosure claims against BANA.  The trustee of Manuel's
bankruptcy estate filed a complaint against BANA on January 14,
2021 alleging wrongful foreclosure in violation of HRS § 667-5
(Supp. 2008) (Hawai'i's former nonjudicial foreclosure statute)
and HRS Chapter 480 (2008) (specifically, Hawai'i's unfair and
deceptive acts and practices and unfair methods of competition
statutes).  For example, one of the specific allegations was
that the mortgagee postponed the foreclosure auction without
publishing the change of date, as required under the power of
sale and the nonjudicial foreclosure statute in effect at the
time.  The complaint sought only money damages against BANA.  It
did not seek return of title and possession of the property to
Manuel.

### III.  Certified Questions

Under HRS § 602-5(2) (2016), this court "shall have the
jurisdiction and power[]" to "answer, in its discretion, . . .
any question or proposition of law certified to it by a federal

district[2] or appellate court if the supreme court shall so provide by rule. . . ."  Hawai'i Rules of Appellate Procedure ("HRAP") Rule 13(a) (2000) provides the following:

> When a federal district or appellate court certifies to the Hawai'i Supreme Court that there is involved in any proceeding before it a question concerning the law of Hawai'i that is determinative of the cause and that there is no clear controlling precedent in the Hawai'i judicial decisions, the Hawai'i Supreme Court may answer the certified question by written opinion.

Questions of law certified by the federal courts are reviewable de novo under the right/wrong standard of review.  Hancock v. Kulana Partners, LLC, 145 Hawai'i 374, 380, 452 P.3d 371, 377 (2019) (citation omitted).

## IV.  Discussion

The first certified question centers upon the interpretation of HRS § 501-118 (the "Foreclosure" section of our Land Court statutes found in HRS chapter 501).  HRS § 501-118 states the following:

> In case of foreclosure by exercising the power of sale without a previous judgment, the affidavit required by chapter 667 shall be recorded with the assistant registrar. The purchaser or the purchaser's assigns at the foreclosure sale may thereupon at any time present the deed under the power of sale to the assistant registrar for recording and obtain a new certificate.  Nothing in this chapter shall be construed to prevent the mortgagor or other person in interest from directly impeaching by action or otherwise, any foreclosure proceedings affecting registered land, prior to the entry of a new certificate of title.

---

[2]     The bankruptcy court "constitute[s] a unit of the district court" under 28 U.S.C. § 151 (1984) ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district.").

HRS § 501-118(c) (emphasis added). The question is whether a wrongful nonjudicial foreclosure claim seeking only money damages from the foreclosing lender is an action "directly impeaching . . . any foreclosure proceedings affecting registered land," and, if so, whether such a proceeding must be initiated "prior to the entry of a new certificate of title."

## A. The parties' arguments

### 1. BANA's opening brief

In its opening brief, BANA first argues that the overarching purpose of the Land Court system in Hawai'i is to "conclusively establish title to land through the issuance of a certificate of title," citing Wells Fargo v. Omiya, 142 Hawai'i 439, 446, 420 P.3d 370, 377 (2018). BANA states that the TCT notes any encumbrances or claims adverse to the title of the registered owner and that the holder of the TCT holds it free from all encumbrances except those noted on the TCT. BANA asserts HRS § 501-118 bars wrongful foreclosure claims after the Land Court certifies a new TCT, pointing to the plain language of the statute.

BANA next explains that two Hawai'i appellate cases, Aames Funding Corp. v. Mores, 107 Hawai'i 95, 110 P.3d 1042 (2005), and Omiya, 142 Hawai'i 439, 420 P.3d 370, both held that HRS § 501-118(c) bars a challenge to a foreclosure proceeding after the Land Court certifies a new TCT. BANA states that Aames barred a

7

challenge to a foreclosure (based on alleged violation of the federal Truth in Lending Act) because the Land Court had already certified a new TCT. BANA states that Omiya affirmed that "HRS § 501-118 specifies 'entry of a new certificate of title' as the determinative point when foreclosure proceedings may no longer be impeached."

BANA argues that the remedy Manuel seeks (money damages against the foreclosing lender) does not change the result because claims for money damages still "directly impeach the foreclosure" under HRS § 501-118(c). To support its argument, BANA cites to cases from the Hawai'i district court and the Ninth Circuit: Fergerstrom v. PNC Bank, N.A., 342 F. Supp. 3d 1029 (D. Haw. 2018), aff'd, 802 F. App'x. 268 (9th Cir. 2020); and Seegers v. CIT Bank N.A., Civil 17-00399 LEK-KSC, 2018 WL 1558550 (D. Haw. Feb. 28, 2018), which barred similar claims for money damages from the foreclosing lenders in wrongful nonjudicial foreclosure and Hawai'i UDAP/UMOC actions brought after the entry of new TCTs for the properties. BANA quotes the Fergerstrom court as holding that "because the action attacks (i.e., impeaches) the foreclosure proceeding, the particular form of remedy . . . does not remove these claims impeaching title from the proscription imposed by HRS § 501-118 and Aames." Fergerstrom, 342 F. Supp. 3d at 1045. The Fergerstrom court continued, "[I]t is the action itself that impeaches the prior

foreclosure proceeding, not the measure or type of damages sought." Id.

BANA then notes that the Fergerstrom court rejected the plaintiffs' assertion that tort claims are preserved under another section of the Land Court chapter, HRS § 501-212 (2018), notwithstanding HRS § 501-118.  HRS § 501-212 is titled "Actions for compensation for fraud, mistake, etc.," and it provides the following:

> Any person who, without negligence on the person's part, sustains loss or damage, or is deprived of land or of any estate or interest therein, after the original registration of land under this chapter, by the registration of any other person as owner of such land, or of any estate or interest therein, through fraud, or in consequence of any error, omission, mistake, or misdescription in any certificate of title or in any entry of memorandum in the registration book, may prosecute a contract claim in the circuit court for the recovery of compensation for such a loss or damage or for such land or estate, or interest therein; provided that when the person deprived of land or of any estate, or interest therein, in the manner above stated has a remedy for the recovery of the land or of the estate, or interest therein, the person shall exhaust this remedy before resorting to the contract claim herein provided.  Nothing in this chapter shall be construed to deprive the plaintiff of any tort claim which the plaintiff may have against any person for loss or damage, or deprivation of land, or of any estate or interest therein.

BANA quotes the Fergerstrom court as stating that HRS § 501-212 "on its face, does not touch HRS § 501-118."  Fergerstrom, 342 F. Supp. 3d at 1044.  The Fergerstrom court reasoned, "Whereas [section 501-212] preserves pre-existing tort claims, [section 501-118] does not deprive a plaintiff of any tort claim – it simply reinforces the conclusive and unimpeachable nature of Land Court certificates of title after entry."  Id.

9

BANA notes that the Ninth Circuit affirmed the Fergerstrom court's order as follows:  "The district court correctly determined that section 501-118's time bar applied to [plaintiffs'] tort claim for money damages.  [Plaintiffs'] claims were based on defects in the non-judicial foreclosure sales of their properties and 'directly impeach[ed] . . . the foreclosure proceedings."  Fergerstrom, 802 F. App'x at 270.

BANA also quotes the district court's observation in Seegers that "[the] legislative intent [of HRS § 501-118] would be thwarted if the conclusive and unimpeachable character of certificates of title could be easily 'sidestepped' by suing the seller of registered land for money damages as a substitute for suing the current owner of registered land for title and possession."  Seegers, Civil 17-0399 LEK-KSC, 2018 WL 1558550 at *5. BANA ends its opening brief by asking this court to answer the first certified question in the affirmative to hold that HRS § 501-118 bars wrongful nonjudicial foreclosure claims that seek only money damages against the foreclosing lender after the entry of a new TCT.

**2.  Manuel's answering brief**

In his answering brief, Manuel first points out that that Land Court chapter, HRS chapter 501, permits him to bring a wrongful foreclosure claim, which sounds in tort.  Specifically, HRS § 501-212 states, in relevant part, "Nothing in this chapter

U.S. Bankruptcy Court - Hawaii  #21-90001  Dkt # 61  Filed  03/08/23  Page 10 of 37

shall be construed to deprive the plaintiff of any tort claim which the plaintiff may have against any person for loss or damage, or deprivation of land, or of any estate or interest therein."

He then argues that HRS § 501-118 itself contains no express time limitation to bringing a wrongful foreclosure claim.  Rather, he states that the "bar to 'impeaching' a foreclosure proceeding emanates from HRS § 501-88."  That statute is titled "Certificate as evidence," and it provides the following:

> The original certificate in the registration book, and any copy thereof duly certified under the signature of the registrar or assistant registrar, and the seal of the court, shall be received as evidence in all the courts of the State and shall be conclusive as to all matters contained therein, except as otherwise provided in this chapter.

HRS § 501-88 (2018).  Manuel contends that the Aames court read HRS §§ 501-118 and 501-88 together to conclude that a mortgagor's claim directly impeaching a foreclosure proceeding must be brought before the TCT is given conclusive effect to all matters contained therein, which is upon the entry of a new TCT following the foreclosure sale.  To Manuel, this means that a claim challenging the contents of the new TCT (specifically, the identification of the registered owner) is barred by the entry of the new TCT.

Manuel reads Aames and Omiya as supporting his interpretation of HRS § 501-118 because the former mortgagors in

both cases challenged foreclosures and claimed title to their respective properties.  As such, Manuel continues, the former mortgagors in both Aames and Omiya raised claims "directly impeaching" the ownership interests listed on the new TCTs.  In Aames and Omiya, this court concluded that HRS § 501-118 barred challenges to title after the entry of the new TCT.  By contrast, Manuel argues that his wrongful foreclosure claim does not call into question the new owner's title.  Specifically, Manuel points out that the new owner's TCT will not reflect "how a foreclosure sale was performed or whether the foreclosure was wrongful"; therefore, his wrongful foreclosure claim does not "directly impeach" the TCT to the property.  Further, Manual emphasizes that the remedy he seeks is tort damages for the wrongful foreclosure, not return of title and possession.

Manuel supports his position with the plain language of the statute.  He asserts that the plain meaning of "directly impeach" in HRS § 501-118 is to "exactly; completely," "absolute[ly]," "or "unconditional[ly]" "dispute, disparage, deny, or contract" another's title and right of possession of property lost in foreclosure, citing WEBSTER'S NEW WORLD DICTIONARY 389 (3d college ed. 1988), and BLACK'S LAW DICTIONARY, 459, 753 (6th ed. 1990), respectively.  Looking to the rest of the Land Court chapter, Manuel notes that the legislature has included the term "impeach" without the modifier "directly," for example, in HRS §

12

501-144 (2018), which is titled "New certificate after enforcement of lien; tax sale," and which states, in relevant part, "At any time prior to the entry of a new certificate the registered owner may pursue all the registered owner's remedies to <u>impeach</u> or annul proceedings under executions or to enforce liens of any description."  (Emphasis added.)  Therefore, Manuel argues, the term "directly" must carry independent significance when it modifies the word "impeach."  He interprets "directly impeaching" a TCT to mean "an unqualified attack on or challenge to the title and right of possession lost to foreclosure."

Manuel notes that the bankruptcy court questioned whether the last sentence of HRS § 501-118 would bar a claim for money damages against a foreclosing lender.  That sentence states, "After a new certificate of title has been entered, no judgment recovered on the mortgage note for any balance due thereon shall operate to open the foreclosure or affect the title to registered land."  The bankruptcy court reasoned that the phrases "directly impeaching . . . any foreclosure proceedings" and "open the foreclosure or affect the title to registered" land could not mean the same thing, otherwise the legislature would have used the same phrasing.  Manuel, however, argues that differently phrased portions of a statute could nevertheless mean the same thing.  Further, if the last sentence does mean something different from "directly impeaching any foreclosure

13

proceeding," Manuel reads it as pertaining to an action for a deficiency judgment following a foreclosure sale, where the mortgagor raises foreclosure defects as a defense to deficiency liability; in such an instance, raising the defense does not re-open the foreclosure or affect title, citing <u>HawaiiUSA Fed. Credit Union v. Monalim</u>, 147 Hawai'i 33, 464 P.3d 821 (2020).

Manuel next posits that the federal courts in <u>Fergerstrom</u> and <u>Seegers</u> interpreted the term "directly impeach" to prohibit wrongful foreclosure claims seeking only money damages unless the plaintiff would also have been entitled to return of title and possession of the property. Manuel argues this reading is contrary to our case law recognizing that a remedy for wrongful foreclosure could be damages alone, where the foreclosed-upon property has passed into the hands of an innocent purchaser for value, citing <u>Delapinia v. Nationstar Mortg. LLC</u>, 150 Hawai'i 91, 497 P.3d 106 (2021); <u>Mount v. Apao</u>, 139 Hawai'i 167, 384 P.3d 1268 (2016); and <u>Santiago v. Tanaka</u>, 137 Hawai'i 137, 366 P.3d 612 (2016).

Manuel next opines that an in pari materia reading of HRS § 501-118 and other Land Court statutes also supports his position that HRS § 501-118 does not bar money damage claims against a foreclosing lender. Manuel reiterates that Land Court property owners may sue in tort pursuant to HRS § 501-212. Manuel then

points to HRS § 501-81 (2018), which is titled "Legal incidents of registered land" and states, in relevant part

> Registered land, and ownership therein, shall in all respects be subject to the same burdens and incidents which attach by law to unregistered land.  Nothing in this chapter shall in any way be construed to . . . change or affect in any way any other rights or liabilities created by law and applicable to unregistered land; except as otherwise expressly provided in this chapter.

Manuel argues that nothing in HRS § 501-118 expressly provides that Land Court property owners cannot recover money damages from foreclosing lenders, when that remedy is available to non-Land Court property owners.

Next, Manuel contends that BANA's reading of HRS § 501-118 to preclude money damages claims after the entry of a new TCT improperly abrogates a wrongful foreclosure plaintiff's common law right to sue for damages, where no express legislative intent to do so appears.  Manuel notes that the common law right to sue for wrongful foreclosure damages originated in Johnson v. Tisdale, 4 Haw. 605 (Haw. Kingdom 1883), and continues to be recognized in our recent cases, such as Delapinia, 150 Hawai'i 91, 497 P.3d 106; Mount, 139 Hawai'i 167, 384 P.3d 1268; and Santiago, 137 Hawai'i 137, 366 P.3d 612.

Manuel asserts that the legislative history of HRS § 501-118 validates his reading of the statute.  He notes that when the Land Court statute was enacted in 1903, HRS § 501-118's predecessor stated the following:  "Nothing contained in this

Act shall be construed to prevent the mortgagor or other person in interest from directly impeaching, by bill in equity or otherwise, any foreclosure proceedings affecting registered land, prior to the entry of a new certificate of title."  1903 Haw. Sess. Laws Act 56, § 63 at 307.  Manuel explains that, at the time, a bill in equity was the vehicle by which a wrongful foreclosure plaintiff would seek to set aside a sale and, therefore, "directly impeach" the foreclosure proceedings.  By contrast, at the time, money damages were a form of legal relief.  With the promulgation of the Hawai'i Rules of Civil Procedure, and the merger of law and equity in Hawai'i courts, the "bill in equity" language in HRS § 501-118 was replaced with "action."  Manuel asserts that HRS § 501-118 may reasonably be read today to time-bar those claims that would have been originally filed as bills in equity.

Manuel then argues that structural issues arise under BANA's reading of HRS § 501-118 as setting a time bar as "the entry of the new TCT."  Under BANA's interpretation of the statute, the time a plaintiff has for bringing a wrongful foreclosure damages claim depends upon how quickly the Land Court can certify and enter a new TCT.  Manuel points out that the Land Court was once able to certify TCTs on the same day they were presented, Hon. Gary W.B. Chang, <u>Land Court:</u> <u>Demystifying an Enigma</u>, Hawaii Bar Journal 4, 10 (2017); within

16

months, see Aames, 107 Hawai'i at 96 n.2, 97, 110 P.3d at 1043
n.2, 1044; and currently, after years, see Omiya, 142 Hawai'i at
452, 420 P.3d at 383 (discussing the Land Court's backlog).  In
any event, Manuel argues that "foreclosed Land Court homeowners
risk having their damages remedies further curtailed by the
speed with which the Land Court enters new TCTs," which could
lead to severe and unjust results.

Lastly, Manuel asserts that the fraud exception to HRS §
501-118 applies to his case.  See HRS § 501-106 (2018) ("[I]n
all cases of registration procured by fraud the owner may pursue
all the owner's remedies against the parties to the fraud,
without prejudice however to the rights of any innocent holder
for value of a certificate of title.").  He argues that BANA
committed constructive fraud upon Manuel due to the
confidential relationship between a self-dealing mortgagee bank,
who occupies a superior position in a nonjudicial foreclosure,
and the mortgagor, citing Hungate v. Law Off. of David B. Rosen,
139 Hawai'i 394, 409, 391 P.3d 1, 16 (2017).

Manuel urges this court to answer the first certified
question in the negative to hold that an action alleging
wrongful nonjudicial foreclosure of Land Court property that
seeks only money damages is not time-barred by the entry of a
new TCT because such an action does not "directly impeach"
foreclosure proceedings under HRS § 501-118.

17

### 3.  BANA's reply brief

In its reply, BANA emphasizes that the plain language of HRS § 501-118 precludes a mortgagor from bringing a wrongful foreclosure claim, regardless of the remedy sought, after entry of a new TCT.  With respect to the Manuel's argument that BANA's reading of HRS § 501-118 abrogates the common law right to sue for wrongful foreclosure, BANA counter-argues that HRS § 501-118 merely sets a time limit for bringing the claim.  With respect to Manuel's reading of the legislative history of HRS § 501-118, BANA counter-argues that the statute's prohibition on bringing, past the entry of a new TCT, proceedings directly impeaching a foreclosure "by bill of equity or otherwise" encompasses the money damages claim Manuel asserts, as that statute is phrased now ("any action or otherwise") and when the statute was originally enacted ("by bill of equity or otherwise").  In any event, BANA states that resort to legislative history is unnecessary where the plain language of the statute is clear.  As to Manuel's allegation that BANA committed constructive fraud, BANA counter-argues (1) that the argument is irrelevant to the certified question presented to this court; and (2) mortgagor and mortgagee are generally not in a confidential relationship that would give rise to a constructive fraud claim.

## B.  Analysis

The first certified question asks this court to engage in statutory interpretation of the word "directly" in HRS § 501-118's phrase "directly impeaching by action or otherwise, any foreclosure proceedings affecting registered land."  Statutory interpretation is guided by established rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Rees v. Carlisle, 113 Hawai'i 446, 452, 153 P.3d 1131, 1137 (2007) (citations omitted).

> In construing an ambiguous statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1-15(1) (1993).  Moreover, the courts may resort to extrinsic aids in determining legislative intent.  One avenue is the use of legislative history as an interpretive tool.

Gray v. Admin. Dir. of the Court, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (cleaned up).

> ### 1.  HRS § 501-118's phrase "directly impeaching . . . any foreclosure proceedings" contains an ambiguity.

The plain meaning of "directly" in HRS § 501-118 is not obvious.  We look to the rest of the Land Court chapter for guidance in construing the word.  We agree with Manuel that the

term "directly" must have independent significance in modifying the word "impeach" because the only statute within Chapter 501 concerning "impeaching" a TCT is HRS § 501-144. That statute is titled "New certificate after enforcement of lien; tax sale," and it states, in relevant part, "At any time prior to the entry of a new certificate the registered owner may pursue all the registered owner's remedies to impeach or annul proceedings under executions or to enforce liens of any description." The phrase "directly impeach" in HRS § 501-118 must have a meaning different from "impeach" in HRS § 501-144. We have held that where the legislature "uses different terms in different parts of a statute, we must presume this was intentional, and that the legislature means two different things." Peer News LLC v. City & Cnty. of Honolulu, 138 Hawai'i 53, 67-68, 376 P.3d 1, 15-16 (2016) (citing Agustin v. Dan Ostrow Constr. Co., 64 Haw. 80, 83, 636 P.2d 1348, 1351 (1981).

**2.   Legislative history provides no guidance on interpreting the phrase "directly impeaching . . . any foreclosure proceedings."**

The legislative history of both HRS §§ 501-118 and -144 is silent as to the difference in meaning, however. Further, the legislative history of HRS § 501-118 itself provides no insight into the meaning of "directly impeach." We disagree with Manuel that there is meaning to be found in the evolution of the statutory language from 1903's verbiage, "directly impeaching,

20

by bill in equity or otherwise, any foreclosure proceedings affecting registered land" to the current verbiage, "directly impeaching, by action or otherwise, any foreclosure proceedings affecting registered land."  Manuel argues that the 1903 predecessor to HRS § 501-118 barred only actions in equity (i.e., those seeking to void title and return possession of the property) after the entry of a new TCT; therefore, the statute did not bar actions at law for money damages after the entry of a new TCT.  We agree with BANA that the phrase "or otherwise" could have referred to actions at law.

3.  **Our precedent interpreting HRS § 501-118 has not yet examined wrongful foreclosure complaints seeking only money damages against foreclosing lenders.**

Our state appellate court precedent interpreting HRS § 501-118 has also never dealt with the issue of whether the entry of a new TCT would bar a wrongful foreclosure claim seeking only money damages.  Our key cases, Aames, 107 Hawai'i 95, 110 P.3d 1042; Bank of New York Mellon v. Onaga, Inc., 140 Hawai'i 358, 400 P.3d 559 (2017); and Omiya, 142 Hawai'i 439, 420 P.3d 370; have all held that HRS § 501-118 bars wrongful foreclosure claims seeking to affect title to property after the entry of a new TCT.

In Aames, a mortgagee bank foreclosed upon mortgagors, the Moreses.  Aames, 107 Hawai'i at 97, 110 P.3d at 1044.  After the Land Court issued the mortgagee a TCT to the property, the

21

Moreses refused to surrender possession, and the mortgagee filed an action for ejectment against them.  Id.  The district court granted judgment for possession and writ of possession in favor of the mortgagee and against the Moreses.  Id.

On appeal, the Moreses argued that the district court did not have jurisdiction over the case because their case involved a dispute over title to real property, which, pursuant to HRS § 604-5(d), the district courts do not hear.  Aames, 107 Hawai'i 98, 110 P.3d 1045.  In addition to holding that the Moreses did not sufficiently assert the source, nature, and extent of their title claims, this court applied HRS § 501-118 to hold that "defenses to mortgages foreclosed upon by exercise of the mortgagee's power of sale must be raised 'prior to the entry of a new certificate of title.'"  Aames, 107 Hawai'i at 102, 110 P.3d at 1049.

In reaching this holding, we first explored the "sparse" legislative history of Chapter 501, noting that the Land Court system was intended to "provide[] an economic and convenient manner of recording land titles, which . . . will do away with the present cumbersome plan of records and largely reduce the expense of land transfers."  Aames, 107 Hawai'i at 101, 110 P.3d at 1048.  The purpose of the Land Court system, we stated, was to "conclusively establish title to land through the issuance of a certificate of title."  Id. (citation omitted).  We then held

22

that HRS § 501-118 directs that [a mortgagor's right to challenge a foreclosure proceeding] is to be exercised 'prior to the entry of a new certificate of title.'"  <u>Id.</u>  We "buttressed" this holding with HRS § 501-88, which "provides that the matters stated in the certificate are to be given conclusive effect in the courts."  <u>Id.</u>  As the Moreses brought their title defense to the ejectment proceeding after the entry of the TCT listing the mortgagee as title holder, we held that the mortgagee's title to the subject property became "conclusive and unimpeachable."  <u>Aames</u>, 107 Hawai'i at 102-03, 110 P.3d 1049-50.  Thus, Aames interpreted the "entry of a new TCT" limit in HRS § 501-118 to protect a TCT's conclusivity of title.

Similarly, in Onaga, we did not allow a junior creditor to "undo" a judicial foreclosure once good faith purchasers had entered their TCT with the Land Court.  <u>Onaga</u>, 140 Hawai'i at 368, 400 P.3d at 569.  In that case, the junior creditor appealed a judicial foreclosure proceeding but did not post a supersedeas bond.  <u>Onaga</u>, 140 Hawai'i at 362, 400 P.3d at 563. While the case was on appeal, the foreclosed upon property was sold to good faith purchasers, who moved to intervene in the appeal and dismiss it as moot, presenting as evidence the new TCT issued to them.  <u>Onaga</u>, 140 Hawai'i at 363, 400 P.3d at 564. We noted that "title to the Property has already passed to the [good faith purchasers]"; therefore, "[a]llowing [the junior

23

creditor] to undo or otherwise hinder the sale of the Property to the [good faith purchasers] would be inconsistent with the purposes underlying our Land Court statute." Onaga, 140 Hawai'i at 368, 400 P.3d at 569. In so ruling, we cited both HRS § 501-88 and the policy reasons explored in Aames, further underscoring that the time limit to bring claims under HRS § 501-118 is intended to protect the conclusivity of the new TCT. Onaga, 140 Hawai'i at 368-69, 400 P.3d at 569-70.

Lastly, in Omiya, this court held that a mortgagee was entitled to bring an action seeking to "restore title" to it, including "cancellation of a Transfer Certificate of Title," where the action was brought prior to the entry of a TCT to a third-party purchaser. Omiya, 142 Hawai'i at 443, 456, 420 P.3d 374, 387. In Omiya, Wells Fargo foreclosed on its mortgage lien in a nonjudicial foreclosure, then the Association of Apartment Owners of the Ilikai Apartment Building foreclosed on the property for nonpayment of maintenance fees. Omiya, 142 Hawai'i at 443, 420 P.3d at 374. The property was then sold to a third party. Id. The Land Court had recorded the quitclaim deed for the conveyance to the third party, but it had not yet certified a new TCT for the third party. Id. We held that Wells Fargo's action was not barred by HRS § 501-118, as its challenge to title was brought prior to the entry (which we defined as "certification") of the new TCT to the third party. Omiya, 142

24

Hawai'i at 455, 420 P.3d at 386.  Thus, Wells Fargo could directly impeach and seek to undo the foreclosure proceedings because the certification of the new TCT had not occurred at the time suit was brought.

In sum, the parties challenging foreclosures in <u>Aames</u>, <u>Onaga</u>, and <u>Omiya</u> each sought to undo foreclosures, which does affect the conclusivity of the matters stated within an entered TCT (namely, the identification of the title owner).  <u>Aames</u>, 107 Hawai'i 95, 110 P.3d 1042; <u>Onaga</u>, 140 Hawai'i 358, 400 P.3d 559; <u>Omiya</u>, 142 Hawai'i 439, 420 P.3d 370.  These parties did not seek money damages against a foreclosing mortgagee, which does not affect the conclusivity of matters stated within an entered TCT. <u>Aames</u>, 107 Hawai'i 95, 110 P.3d 1042; <u>Onaga</u>, 140 Hawai'i 358, 400 P.3d 559; <u>Omiya</u>, 142 Hawai'i 439, 420 P.3d 370.  These cases tend to support Manuel's contention that to "directly impeach" foreclosure proceedings, an action must threaten the conclusivity of a new TCT, entered after the foreclosure sale.

**4.    The federal cases interpreting HRS § 501-118 are not persuasive.**

BANA urges us to look to the district court and Ninth Circuit cases holding that HRS § 501-118 bars wrongful foreclosure claims, seeking only money damages, brought after the entry of a new TCT.  <u>See</u> <u>Seegers</u>, Civil 17-00399 LEK-KSC, 2018 WL 1558550; <u>Fergerstrom</u>, 342 F. Supp. 3d 1029; and

25

Fergerstrom, 802 F. App'x. 268. We are not bound by these courts' interpretations of Hawai'i law, and we in fact disagree with them. Each of these cases seem to read "directly" out of the phrase "directly impeach" in HRS § 501-118 and is, therefore, not useful to us in answering the first certified question.

First, in Seegers, the district court dismissed the Plaintiff's quiet title and wrongful foreclosure damages claims by applying Aames to hold that the claims were barred by the entry of new TCTs following the foreclosure sale. Seegers, 2018 Civil 17-00399 LEK-KSC, WL 1558550 at *2. As to the wrongful foreclosure money damages claim in particular, the district court stated, "Plaintiff's claimed entitlement to money damages for loss of title and possession impeaches the foreclosure proceeding and contradicts the Land Court's issuance of new certificates of title." Seegers, Civil 17-00399 LEK-KSC, 2018 WL 1558550 at *4 (emphasis added). This statement, however, does not interpret the word "directly," modifying the word "impeach" in HRS § 501-118. The district court went on to state that the plaintiff would be entitled to money damages for loss of title and possession "only if he was legally entitled to title and possession of the Property," but because new TCTs had already been entered, he was not. Id. Finally, the district court stated that the legislative intent behind the Land Court

26

chapter "would be thwarted if the conclusive and unimpeachable character of certificates of title would be easily 'sidestepped' by suing the seller of registered land for money damages as a substitute for suing the current owner of registered land for title and possession."  Seegers, Civil 17-00399 LEK-KSC, 2018 WL 1558550 at \*5.

The Fergerstrom court borrowed heavily from Seegers in holding, "As a matter of Hawai'i law, the Land Court's entry of Certificates of Title is conclusive and unimpeachable evidence of the subsequent owners' title to the properties, and Plaintiff's [wrongful foreclosure] claims, which seek to impeach the foreclosure proceedings, and demand damages to compensate for the loss of title and possession, are statutorily precluded" Fergerstrom, 342 F. Supp. 3d at 1032 (citing Aames, 107 Hawai'i at 101, 110 P.3d at 1048; HRS § 501-118) (emphasis added).  Like the Seegers court, the Fergerstrom court did not interpret the word "directly," modifying the word "impeach" in HRS § 501-118. To the Fergerstrom court, the plaintiffs' wrongful foreclosure action "attacks (i.e., impeaches) the foreclosure proceeding" "regardless of how the remedy is styled."  342 F. Supp. 3d at 1045 (omitting the modifier "directly" in interpreting HRS § 501-118).  Moreover, the Fergerstrom court viewed a wrongful foreclosure claim praying only for money damages as an attempt

to "plead around Aames by requesting equitable damages
equivalent to restoring title."  342 F. Supp. 3d at 1042-43.

The Ninth Circuit affirmed the district court's Fergerstrom
order in a two-page memorandum opinion that stated only, "The
district court correctly determined that section 501-118's time
bar applied to Appellants' tort claims for money damages.
Appellants' claims were based on defects in the non-judicial
foreclosure sales of their properties and 'directly impeach[ed]
. . . the foreclosure proceedings."  Fergerstrom, 802 F. App'x.
at 270 (citing Aames, 107 Hawai'i 95, 110 P.3d 1042).  No further
reasoning is given.

None of the federal cases interpreted the term "directly"
in HRS § 501-118's phrasing "directly impeaches any foreclosure
proceeding."  Further, the district court in both Seegers and
Fergerstrom viewed wrongful foreclosure money damages claims as
"equivalent" to claims for the return of title and possession,
when our precedent has not explicitly stated that.

>   **5.  Our recent precedent on the remedies available
>        following wrongful foreclosure do not foreclose the
>        possibility that a money damages claim could be
>        brought following the entry of a new TCT to a third-
>        party purchaser.**

In fact, our precedent contemplates wrongful foreclosure
actions seeking only money damages where return of title is not
practicable (or, in this case, requested) and has not
necessarily framed the remedies as equivalents.  First, in

28

Santiago, we held that a mortgagee's nonjudicial foreclosure upon mortgagors' property was unlawful because it did not proceed pursuant to a power of sale (the mortgage document had omitted a power of sale clause, which was required by law). 137 Hawaiʻi at 156, 366 P.3d at 631. Return of title and possession of the property was not practicable, as the property had already been resold to an innocent purchaser for value after the foreclosure. 137 Hawaiʻi at 158, 366 P.3d at 633. Therefore, we ruled that the mortgagors were "entitled to restitution of their proven out-of-pocket losses from [the mortgagee's] wrongful foreclosure of the Mortgage and subsequent sale of the [property]." Id. We did not measure damages as the equivalent of title and possession.

Next, in Mount, we held that a mortgagor wrongfully foreclosed upon mortgagees' property by failing to provide information on reinstating the mortgage loan within five days of a request. 139 Hawaiʻi at 169, 384 P.3d at 1270. The property had already been sold to a third party, whose status as an innocent purchaser for value was not determined at the time of appeal and certiorari. 139 Hawaiʻi at 180, 384 P.3d at 1281. Therefore, the case was remanded to the circuit court to determine whether the third party was an innocent purchaser for value, in order to determine which remedy under Santiago applied: rendering the foreclosure sale voidable and returning

29

title and possession to the mortgagors (where the third party was found not to be an innocent purchaser for value) or damages only (where the third party was found to be an innocent purchaser for value).  Id.

In Hungate, we held that a mortgagee wrongfully foreclosed upon a mortgagee by failing to give proper notice of a foreclosure auction date and postponements of that date pursuant to the mortgage's power of sale and the non-judicial foreclosure statute in effect at the time.  139 Hawai'i at 402, 391 P.3d at 9.  We noted that "the mortgagor can protect its interests through filing a claim against the mortgagee for wrongful foreclosure," and reiterated that, "[w]hen voiding the foreclosure is not possible, the mortgagor is entitled to 'restitution of their proven out-of-pocket losses' through a wrongful foreclosure claim."  139 Hawai'i at 407, 391 P.3d at 14 (quoting Santiago, 137 Hawai'i at 158-59, 366 P.3d at 633-34).

Lastly, in Delapinia, we summarized the state of our jurisprudence on remedies for wrongful foreclosure as follows:

> Hawai'i law has moved unmistakably towards the conclusion that sales pursuant to a wrongful foreclosure are voidable, regardless of whether the violation of statutory or contractual, substantial or a mere irregularity.  This policy protects the interests accrued by innocent purchasers and avoids forfeiture if possible, while deterring the conduct of the party that wrongfully foreclosed through a damage remedy.

150 Hawai'i at 104, 497 P.3d at 119.  Thus, Delapinia noted that Hawai'i's wrongful foreclosure remedies are twofold and

alternative (and not necessarily equivalent) to each other:  (1) return of title and possession; or (2) money damages.  Id.

We acknowledge that these rules developed in the context of nonjudicial foreclosures of properties registered in the Bureau of Conveyances.  See Santiago, CAAP-11-0000697, ICA Dkt. 28:38; Mount, 139 Hawai'i at 170, 384 P.3d at 1271; Hungate, 139 Hawai'i at 399, 391 P.3d at 6; Delapinia, CAAP-17-0000387, ICA Dkt. 16:32.[3]  Although Santiago, Mount, Hungate, and Delapinia all involved regular system property, Land Court property is "subject to the same burdens and incidents which attach by law to unregistered land."  HRS § 501-81.

We next consider whether HRS 501-118's "entry of a new TCT" limitation bars each type of remedy in the specific context of foreclosures upon Land Court property.  A complaint, filed after the entry of a new TCT and seeking the first remedy (return of title and possession), does "directly impeach" foreclosure proceedings because it challenges the matters contained within a new TCT (i.e., the identification of the owner of the property).  A complaint, filed after the entry of a new TCT and seeking the second remedy (money damages against a wrongfully foreclosing mortgagee), does not "directly impeach" foreclosure proceedings

---

[3] We take judicial notice of the records filed in our appellate docket that the foreclosed properties at issue in Santiago and Delapinia were registered in the regular system.  Hawai'i Rules of Evidence Rule 201.

because it does not challenge the matters contained within the new TCT (i.e., the identification of the owner of the property).

**6.  HRS § 501-118 does not bar a wrongful foreclosure complaint seeking only money damages from the foreclosing mortgagee, even when the complaint is brought after the entry of a TCT to a third-party purchaser.**

In short, reading HRS § 501-118 in harmony with (1) our precedent and (2) the purpose and policy behind the Land Court chapter to protect the conclusivity of the matters contained within a TCT, we hold that a wrongful foreclosure claim, seeking only money damages against the foreclosing lender, where the property has passed on to a third party, does not "directly impeach" a foreclosure proceeding because it does not affect the matters contained within the new TCT.  Manuel's case illustrates that point:  his wrongful foreclosure claim is based upon alleged irregularities committed by the mortgagee in auctioning his property.  He seeks money damages caused by those irregularities.  He does not seek to affect any matter contained within the new TCT (namely, the identification of the third party owner of the property).

**B.  The <u>Degamo</u> putative class action tolled the limitations periods for bringing a wrongful foreclosure claim.**

As the entry of the new TCTs in this case did not bar Manuel's January 14, 2021 complaint for wrongful foreclosure money damages, the next question is whether the complaint was

timely.  Manuel states that his Complaint was timely filed[4] only if the time for bringing it was tolled by the Degamo putative class action.  Manuel was a putative member of the plaintiff class.

In Levi v. Univ. of Hawai'i, we adopted the United States Supreme Court's holdings on "class-action tolling."  67 Haw. 90, 93, 679 P.2d 129, 132 (1984).  The United States Supreme Court held first that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974).  The Court next clarified that, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."  Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354 (1983).  We have also held that class action tolling ends upon entry of (1) "an order expressly denying a motion for class certification (or expressly denying the last such motion, if there is more than one motion)"; (2) where there is no such express order, upon entry of final judgment dismissing the class

---

[4] We express no opinion as to whether this statement is true.

action, or (3) upon a putative class member's decision to opt out of the class.  Patrickson v. Dole Food Co., 137 Hawai'i 217, 230, 368 P.3d 959, 972 (2015) (ruling specifically on cross-jurisdictional class action tolling).

In its opening brief, BANA argues that the Degamo class action did not toll Manuel's claims for two reasons.  First, BANA argues the plain language of HRS § 501-118 does not extend the time to directly impeach foreclosure proceedings beyond the entry of a new TCT.  Second, BANA argues that HRS § 501-118 is a statute of repose, whose outer time limit is the entry of a new TCT.  BANA states that, unlike statutes of limitations, statutes of repose are not subject to class-action tolling, citing Cal. Pub. Emps'. Ret. Sys. v. ANZ Secs. Inc., 137 S.Ct. 2042, 2051-52 (2017).

Manuel argues that HRS § 501-118 is not a statute of repose, pointing out that Hawai'i appellate courts have held so far that only the following statutes are statutes of repose: HRS §§ 657-5, 657-8, 657-7.3(a), and 514B-94(b).  Further, Manuel points out that Hawai'i appellate courts have allowed challenges to title in cases of fraud even after a new TCT has been entered, citing Aames, 107 Hawai'i at 103, 110 P.3d at 1050, and Fukunaga v. Fukunaga, 8 Haw. App. 273, 280-81, 800 P.2d 618, 622 (1990).

BANA replies that if putative class actions are allowed to toll challenges to title beyond the entry date of the TCT, the purpose of the Land Court system, in general, and of HRS § 501-118, in particular, would be defeated.

In answering the first certified question, we held that HRS § 501-118 did not preclude Manuel from filing his wrongful foreclosure complaint after the entry of the new TCT to the third party.  Therefore, HRS § 501-118 is not the statute under which the complaint's timeliness is measured.  Hence, whether HRS § 501-118 is a statute of limitation or repose is not necessary to decide.  Rather, the statutes of limitations for wrongful foreclosure and Chapter 480 claims apply.

In this case, the pendency of the Degamo putative class action tolled the time for Manuel to file an individual action. Class action tolling began on September 12, 2007, with the filing of the Degamo putative class action complaint.  It clearly ended on September 29, 2021.  Although the district court had dismissed the putative class action on March 14, 2019, the dismissal was appealed to the Ninth Circuit.  Therefore, March 14, 2019 does not mark the date that denial of class certification became clear.  The Ninth Circuit remanded the case to the district court to consider the motion to intervene filed by the class representatives' bankruptcy trustees.  At a status conference, the trustees informed the district court that they

35

no longer sought to intervene.  <u>Degamo</u>, Civil No. 13-00141 at 2.
Therefore, on September 29, 2021, the district court filed its
order denying the motion to intervene as moot.  <u>Id.</u>  On that
date, the denial of class certification became clear.

### V.  Conclusion

First, an action alleging a wrongful nonjudicial
foreclosure of Land Court property that seeks only damages
against the foreclosing lender is not an action that "directly
impeaches" any foreclosure proceedings affecting registered land
within the meaning of HRS § 501-118(c); therefore, the action is
not barred by the entry of a TCT to the buyer at a foreclosure
sale.  Second, the pendency of a putative class action asserting
wrongful foreclosure claims tolls the time during which a class
member may commence an individual action.  The time for
commencing an individual action is tolled until a clear denial
of class certification.  In this case, the filing of the
putative class action on September 7, 2012 tolled the time for
filing an individual wrongful foreclosure claim until September

29, 2021, when the district court's denial of class

certification became clear.

| Patricia J. McHenry and | /s/ Mark E. Recktenwald |
| Allizon Mizuo Lee | |
| for defendant-appellant | /s/ Sabrina S. McKenna |
| | |
| Van-Alan H. Shima, | /s/ Michael D. Wilson |
| James J. Bickerton, and | |
| Bridget G. Morgan-Bickerton | /s/ Todd W. Eddins |
| for plaintiff-appellee | |
| | /s/ Dean E. Ochiai |

